DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 INTRODUCTION {¶ 1} Angela Carson was injured on March 2, 2003, when one of the doors on a medicine cabinet in the apartment where she lived fell from the cabinet and struck her on her neck and shoulder. The apartment was managed by Terrah X Corporation, a company owned by Ida Jack, and was leased to Esther Martin, with whom Ms. Carson lived. Ms. Jack and one of her part-time employees, Vincent Armstrong, installed the medicine cabinet in the apartment late in 2001. Mr. Armstrong testified at a deposition that the cabinet was fully assembled when it was purchased and that he and Ms. Jack simply attached the cabinet to the wall, *Page 2 
following instructions that were included in the box with the cabinet. After the cabinet was installed, Ms. Carson noticed that the door was crooked, but neither she nor Ms. Martin notified Ms. Jack or Mr. Armstrong of the defect. According to the affidavit of Ms. Carson's expert witness, Roger Etz, the hinges on the door that fell off the metal cabinet were attached with a combination of steel and brass screws, while the other door was attached with steel screws only. The brass screws stripped, causing the door to fall onto Ms. Carson. Mr. Etz's affidavit stated that brass screws are more commonly used to fasten wood rather than metal and that steel screws are more commonly used for attaching metal components, because steel screws are harder than brass screws and are more suitable for fastening metal. Additionally, the affidavit stated that Mr. Armstrong inspected the cabinet before he installed it and that Mr. Armstrong knew or should have known that the wrong screws were used on the door, creating a hazardous condition.
 {¶ 2} Ms. Carson filed a complaint for premises liability against Ms. Jack and Terrah X on March 3, 2004. Ms. Jack and Terrah X moved the court for summary judgment, and their motion was denied without written explanation. Ms. Carson voluntarily dismissed the complaint on June 8, 2005, and re-filed her case on the same day. Ms. Jack and Terrah X again moved for summary judgment on January 23, 2007. According to Ms. Carson, the memoranda in support and opposition to the second motion were "virtually identical" to the memoranda in *Page 3 
support and opposition of the motion in the first case. The trial court granted the second motion for summary judgment. The trial court held that Mr. Etz's affidavit was merely conclusory and contained no evidence to suggest that Mr. Armstrong and Ms. Jack knew or should have known that the cabinet was defective. Ms. Carson has appealed. She has argued that: (1) the trial court erred in granting the motion for summary judgment because Ms. Carson produced evidence that the medicine cabinet was negligently installed, and (2) the trial court erred in failing to apply the law of the case doctrine. This Court affirms because (1) the affidavit submitted by Ms. Carson contained only conclusory allegations of negligence that were not based on personal knowledge of facts that would be admissible in evidence, and (2) the law of the case doctrine does not bind a trial court to its own prior interlocutory orders.
 SUMMARY JUDGMENT {¶ 3} Rule 56(C) of the Ohio Rules of Civil Procedure provides that summary judgment should be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." In a motion for summary judgment, the moving party bears the burden of identifying the specific parts of the record that demonstrate that there are no issues of material fact as to the essential elements of the nonmoving party's claims or defenses.Dresher v. Burt, 75 Ohio St. 3d 280, 293, 1996-Ohio-107. Once this burden has been satisfied, the nonmoving party bears a reciprocal burden of *Page 4 
setting forth specific facts demonstrating that an issue of fact exists for trial. Id.; Civ. R. 56(E). The nonmoving party may not rest on the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v. Henkle, 75 Ohio App. 3d 732, 735 (1991). Affidavits must be "made on personal knowledge" and must "set forth such facts as would be admissible in evidence. . . ." Civ. R. 56(E);Jones v. H. T. Enterprises, 88 Ohio App. 3d 384, 389-390 (1993).
 {¶ 4} Section 5321.04(A)(2) of the Ohio Revised Code requires a landlord to "[m]ake all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition. . . ." Failure to comply with this statute constitutes negligence per se.Sikora v. Wenzel, 88 Ohio St. 3d 493, 498, 2000-Ohio-406. A landlord is excused from liability under Section 5321.04(A)(2), however, if the landlord "neither knew nor should have known of the factual circumstances that caused the violation." Id.
 {¶ 5} In their memorandum in support of their motion for summary judgment, Ms. Jack and Terrah X argued that there was no evidence that they knew of a hazardous condition pertaining to the cabinet and there was no evidence that the cabinet was negligently installed. They argued that the medicine cabinet was fully assembled when it was purchased and that Ms. Jack and Mr. Armstrong had not attached the door that fell from the cabinet and injured Ms. Carson. They *Page 5 
merely attached the assembled cabinet to the wall and, therefore, had no reason to know that the door was improperly attached. In response, Ms. Carson filed an affidavit in which Mr. Etz stated that Mr. Armstrong should have noticed that the wrong screws were used on the cabinet doors and replaced the brass screws with steel screws:
 c. [Ms. Jack and Mr. Armstrong] inspected the Medicine Cabinet and installed the cabinet with screws and other materials to the wall surface.
 . . . .
 e. Mr. Armstrong demonstrated sufficient competency to affix the heavy cabinet to the wall. Upon installation, he noticed or should have noticed that different screws were used for each door — all steel screws on one door and steel and brass screws on the door that subsequently failed. He knew or should have known, as a repair person, that the door was hung with different screws as part of the installation.
The affidavit also stated that Ms. Jack and Terrah X "knew, or should have known, that the brass screws would fail, causing the door to fall."
 {¶ 6} For purposes of this case, this Court will assume, without deciding, that the defective cabinet rendered the premises unfit and unhabitable, as the terms "fit" and "habitable" are used in Section5321.04(A)(2). Nevertheless, the conclusory allegations in Mr. Etz's affidavit to the effect that Mr. Armstrong knew or should have known that the wrong screws were used to attach the doors to the cabinet are insufficient to overcome the motion for summary judgment. Rule 56(E) of the Ohio Rules of Civil Procedure requires that affidavits filed in *Page 6 
response to a motion for summary judgment be based on "personal knowledge" and "set forth such facts as would be admissible in evidence." Mr. Etz was an expert witness who was not present when Mr. Armstrong and Ms. Jack installed the cabinet, and he, therefore, had no personal knowledge of whether Mr. Armstrong and Ms. Jack inspected the medicine cabinet and knew that the wrong screws were used. The deposition testimony does not indicate that Mr. Armstrong or Ms. Jack inspected the door hinges as part of the installation process.
 {¶ 7} Nor did Mr. Etz's affidavit state any facts to support his claim that Mr. Armstrong should have known that the wrong screws were used. There is no evidence to contradict Mr. Armstrong's claim that the cabinet was fully assembled when he and Ms. Jack installed it, and Mr. Etz's affidavit contains no explanation as to why Mr. Armstrong and Ms. Jack should have inspected the door hinges and recognized that the wrong screws were used when they were only hanging the preassembled cabinet on the wall. Nor has any explanation been given as to what procedures they should have followed to discover the problem. The evidence did not indicate that Mr. Armstrong or Ms. Jack had any special training or experience that would have led them to discover the defect. Ms. Jack testified that Mr. Armstrong had worked for Terrah X corporation "off and on for approximately 15 years" and that Terrah X essentially hired him on an ad-hoc basis. With no facts supporting Mr. Etz's conclusions, these statements likewise do not satisfy the requirements of Rule 56(E) of the Ohio Rules of Civil Procedure that the affidavits *Page 7 
be based on personal knowledge and facts that would be admissible into evidence. See Jones v. H. T. Enterprises, 88 Ohio App. 3d 384, 389-390
(1993); see also White v. Turner, 4th Dist. No. 01CA2802, 2002-Ohio-116,2002 WL 59632 at *4.
 {¶ 8} Because Mr. Etz's affidavit contained only unsupported conclusory allegations and was not based on personal knowledge of facts that would be admissible in evidence, the trial court did not err in granting the motion for summary judgment. Ms. Carson's first assignment of error is overruled.
 LAW OF THE CASE DOCTRINE {¶ 9} The law of the case doctrine stands for the proposition that "[t]he decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." Mollohan v. Court Dev.Inc., 160 Ohio App. 3d 736, 2005-Ohio-2149, at ¶ 9 (quoting Nolan v.Nolan, 11 Ohio St. 3d 1, 3 (1984)). "It is considered a rule of practice, not a binding rule of substantive law." Hopkins v. Dyer,104 Ohio St. 3d 461, 2004-Ohio-6769, at ¶ 15.
 {¶ 10} Ms. Carson has argued that because the trial court denied the first motion for summary judgment in this case, the court was bound to deny the "virtually identical" motion in the re-filed case as well, based on the law of the case doctrine. Terrah X and Ms. Jack have responded that the law of the case doctrine only requires trial courts to follow the mandates of appellate courts on remand and does not bind a trial court to its own prior interlocutory orders. *Page 8 
 {¶ 11} While the law of the case doctrine may, under certain circumstances, bind a trial court to its own prior rulings, such a situation normally "involves the consequences of failure to appeal an issue." State ex rel. Dannaher v. Crawford, 78 Ohio St. 3d 391, 395
(1997) (quoting Aguinaga v. United Food Commercial Workers Internatl.Union, 854 F.Supp. 757, 773 (D.Kan. 1994)); see also McDowell v.DeCarlo, 9th Dist. No. 23376, 2007-Ohio-1262, at ¶ 13. The parties did not fail to appeal the issues raised on summary judgment in the original filing of this case, as there was no prior final order from which the parties could have appealed. Ms. Carson voluntarily dismissed the initial complaint without prejudice after the trial court denied the first motion for summary judgment. An order denying a motion for summary judgment is interlocutory and generally is not appealable. Lyall v.Gerber, 9th Dist. No. 21405, 2003-Ohio-3590, at ¶ 9. Nor was there any mandate from an appellate court for the trial court to follow in this case. See McDowell, 2007-Ohio-1262 at ¶ 13. Accordingly, the law of the case doctrine is not applicable to this case. The trial court did not err in reconsidering its prior order denying the first motion for summary judgment and granting the motion for summary judgment in the re-filed case. Ms. Carson's second assignment of error is overruled.
 CONCLUSION *Page 9 {¶ 12} Ms. Carson's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
 WHITMORE, P. J. SLABY, J. CONCUR *Page 1